Citation Nr: 1508840 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 07-01 524 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD). 

[Entitlement to service connection for psychosis for the purpose of establishing eligibility for treatment pursuant to the provisions of 38 U.S.C.A. § 1702 (West 2014) is the subject of a separate decision.]



REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel

INTRODUCTION

The Veteran had active service from May 1989 to May 1, 1993, and service under other than honorable conditions from May 2, 1993 to March 18, 1994. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. In January 2010, and February 2012, the Board remanded the claim for additional development. 

In April 2013, the Veteran was afforded a hearing before a Decision Review Officer at the RO.

The Board has not only reviewed the Veteran's physical claims file but also the Veteran's file on the "Virtual VA" system to insure a total review of the evidence. 


FINDING OF FACT

The Veteran does not have an acquired psychiatric disorder, to include PTSD, that was caused by his service.


CONCLUSION OF LAW

An acquired psychiatric disorder, to include PTSD, was not caused by service. 38 U.S.C.A. §§ 105, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.1, 3.12, 3.102, 3.159, 3.303, 3.304(f), 3.307, 3.309, 3.317, 4.9 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Service Connection

The Veteran asserts that he has an acquired psychiatric disorder due to his service. Specifically, he has argued that he has PTSD, and/or a schizoaffective disorder, due to his service, to include service as a tank crewman in the Persian Gulf War. The Veteran has stated that he witnessed rocket and SCUD missile attacks while on active service, saw dead bodies, and witnessed an accidental fatal shooting of a fellow soldier. During his hearing, held in April 2013, it was also argued that he may have had an acquired psychiatric disorder prior to service that was aggravated by his service.

To the extent that the Veteran has argued that he had an onset of a psychiatric disorder as early as June 1993, see e.g., Veteran's letter, received in January 2007, in September 1994, the Veteran was notified of an administrative decision by the RO that found that his character of discharge for the period from May 2, 1993 to March 18, 1994, was considered to be a bar to receipt of monetary VA benefits. Citing 38 C.F.R. § 3.12. The issue is whether the Veteran has a current acquired psychiatric disorder which is related to his "good" period of military service.

In August 2006, the RO denied the claim, which it characterized as a claim for "bi-polar disorder, schizophrenia, major depressive disorder, with memory loss (claimed as bi-polar and undiagnosed memory loss due to Gulf War)." Evidence of record at the time showed that the Veteran had been diagnosed with a number of acquired psychiatric diagnoses, to include PTSD. The Board has recharacterized the issue as stated on the cover page of this decision to address all possible acquired psychiatric disorders. Clemons v. Shinseki, 23 Vet. App. 1 (2009).

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted on the basis of a post-service initial diagnosis of a disease, when "all of the evidence, including that pertinent to service, establishes that the disease was incurred during service." See 38 C.F.R. § 3.303(d). Service connection may also be granted for arthritis when it is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2014). 

Applicable regulations provide that service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a), a link, established by medical evidence between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. See 38 C.F.R. § 3.304(f).

A "Persian Gulf Veteran" is one who served in the Southwest Asia Theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317. The United States Congress has defined the Persian Gulf War as beginning on August 2, 1990, the date that Iraq invaded the country of Kuwait, through a date to be prescribed by Presidential proclamation of law. 38 C.F.R. § 3.2(i) (2014). 

Service-connected disability compensation may be paid to (1) a claimant who is "a Persian Gulf veteran"; (2) "who exhibits objective indications of chronic disability resulting from an illness or combination of illnesses manifested by one or more signs or symptoms such as those listed in paragraph (b) of [38 C.F.R. § 3.317 ]"; (3) which "became manifest either during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016"; and (4) that such symptomatology "by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis." Signs or symptoms which may be manifestations of undiagnosed illness include, but are not limited to: fatigue, signs or symptoms involving the skin, muscle or joint pain, neurologic signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system, and gastrointestinal signs or symptoms. 38 C.F.R. § 3.317(a), (b). 

For purposes of this section, a qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): (A) An undiagnosed illness; (B) The following medically unexplained chronic multisymptom illnesses that are defined by a cluster of signs or symptoms: (1) Chronic fatigue syndrome; (2) Fibromyalgia; (3) Irritable bowel syndrome; or (4) Any other illness that the Secretary determines meets the criteria in paragraph (a)(2)(ii) of this section for a medically unexplained chronic multisymptom illness; or (C) Any diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. 1117(d) warrants a presumption of service-connection. 38 C.F.R. § 3.317(a)(2)(i). 

For purposes of this section, the term medically unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii). For purposes of this section, "objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). For purposes of this section, disabilities that have existed for 6 months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period will be considered chronic. The 6-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4). 

By definition, section 1117 only provides compensation for symptoms of a chronic disability that have not been attributed to a "known clinical diagnosis." 38 C.F.R. § 3.317(a)(1)(ii); Stankevich v. Nicholson, 19 Vet. App. 470, 472 (2006) ("The very essence of an undiagnosed illness is that there is no diagnosis."); Gutierrez v. Principi, 19 Vet. App. 1, 10 (2004) (a Persian Gulf War veteran's symptoms "cannot be related to any known clinical diagnosis for compensation to be awarded under section 1117"); 60 Fed. Reg. 6660, 6665 (Feb. 3, 1995) ("The undiagnosed illness provisions of Public Law 103-446, as implemented by § 3.317, were specifically intended to relieve the unique situation in which certain Persian Gulf War veterans found themselves unable to establish entitlement to VA compensation because their illnesses currently cannot be diagnosed."). 

In the case of claims based on undiagnosed illness under 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez, 19 Vet. App. at 8-9. Further, lay persons are competent to report objective signs of illness. Id. 

According to 38 C.F.R. § 3.384, a "psychosis" includes the following specific disorders: brief psychotic disorder, delusional disorder, psychotic disorder due to general medical condition, psychotic disorder not otherwise specified (NOS), schizoaffective disorder, schizophrenia, schizophreniform disorder, shared psychotic disorder, and substance-induced psychotic disorder.

Personality disorders are not compensable diseases or injuries within the meaning of veterans' benefits law. 38 C.F.R. §§ 3.303(c), 4.9 (2014); Winn v. Brown, 8 Vet. App. 510, 516 (1996); Beno v. Principi, 3 Vet. App. 439 (1992). Given the foregoing, the term "acquired psychiatric disorder" is not intended to include a personality disorder.

Compensation is not payable for a disability that is a result of the appellant's own alcohol or drug abuse. See 38 U.S.C.A. §§ 105, 1131 (West 2014); 38 C.F.R. §§ 3.1(n), 3.301(c) (2014); Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, § 8052, 104 Stat. 1388 , 1388-351; see also VAOPGCPREC 7-99, 64 Fed. Reg. 52,375 (1999); VAOPGCPREC 2-98, 63 Fed. Reg. 31,263 (1998).

When no pre-existing injury or disease is noted upon entry into active duty service, the Veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's injury or disease was both pre-existing and not aggravated by service. 38 U.S.C.A. § 1111 (West 2014); Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). If the presumption of soundness is not rebutted, the claim becomes one for service connection. Wagner, 370 F.3d at 1096 (indicating that, in cases where the presumption of soundness cannot be rebutted, the effect is that claims for service connection based on aggravation are converted into claims for service connection based on service incurrence). In this case, as there is no evidence to show that an acquired psychiatric disorder was noted upon entrance into service, the presumption of soundness attaches, and the claim will not be analyzed on the basis of aggravation. Id.

As an initial matter, the Veteran's service records show that he meets the criteria for consideration as a Persian Gulf veteran for purposes of 38 C.F.R. § 3.317. The Veteran's service personnel records confirm that he served in Southwest Asia from January to May 1991 as an armor crewman. His awards include the Southwest Asia service medal with three bronze service stars. In March 1994, he was administratively discharged under other than honorable conditions in lieu of trail by special court martial. 

The Veteran's service treatment records show that in September 1991, he was noted to have alcohol abuse. A separation examination report is not of record.

As for the post-service medical evidence, it consists of VA and non-VA reports, dated between 2000 and 2014. 

Reports from the Austin State Hospital, covering treatment provided between February and May of 2000, note admission following an apparent suicide attempt, with readmission later that same day after another attempt. They contain Axis I diagnoses that included bipolar disorder NOS, intermittent explosive disorder, depressive disorder NOS, adjustment disorder with mixed emotional features, and cocaine dependence, and Axis II diagnoses of personality disorder NOS, and an antisocial personality disorder. 

The VA reports show the following: in December 2005, the Veteran was evaluated for a seven-year history of homelessness. His history was noted to include being a ward of the state until graduation from high school, being raised in foster homes "or various institutions," being widowed since 1988, and to have served in the Gulf War as a tanker, with "no PTSD issues." He was noted not to have an Axis I diagnosis. A PTSD screen was positive, however, the Veteran denied stress from combat, and was noted to have symptoms related to the early loss of his wife, being homeless for seven years, and having little or no support system, all fact that, very unfortunately, provide evidence against this claim as they all address problems outside of service. 

In February 2006, the Veteran was treated for psychiatric symptoms. He was hospitalized on two occasions between April and May of 2006, with a reported history that included "years of alcohol abuse problems," and Axis I diagnoses that included schizophrenia, psychotic disorder NOS (not otherwise specified), and depressive disorder, and Axis II diagnoses of borderline personality disorder. His "problem lists" included PTSD, a personality disorder NOS, schizoaffective disorder, intermittent explosive disorder, antisocial personality disorder, and polysubstance dependence. His discharge diagnoses included an Axis I diagnoses of schizoaffective disorder, and Axis II diagnoses of borderline personality disorder with antisocial features. 

A VA general medical examination report, dated in May 2006, indicates that the Veteran was currently hospitalized at VA. The report notes a history of polysubstance abuse that includes use of cocaine and alcohol, and that he last worked in 2002 as a plumber's helper, and that Gulf War Syndrome was not found. 

A VA Persian Gulf Protocol examination report, dated in June 2006, contains impressions that included PTSD, personality disorder NOS, schizoaffective disorder, and "memory loss and lack of concentration."

VA progress and hospital notes, dated between 2006 and 2014, show multiple treatments for psychiatric symptoms, with diagnoses primarily of schizoaffective disorder, however, they contain problem lists that, in relevant part, are largely as noted in 2006. In September 2013, the Veteran was hospitalized for treatment of psychiatric symptoms following having been found to have suicidal ideation and auditory hallucinations. A report dated that same month notes that concentration and memory were intact "per conversation." Reports, dated in October 2013 and January 2014, note that his cognition was intact; the October 2013 report shows a complaint of poor memory. 

A decision of the Social Security Administration (SSA), dated in September 2006, shows that the SSA determined that the Veteran was disabled as of October 2005. His primary diagnosis was schizophrenic, paranoid and other functional psychotic disorders, and his secondary diagnosis was personality disorders/conduct disorders. Associated SSA records note that the Veteran indicated that he first began experiencing psychiatric symptoms in 1995, providing more facts against his own claim, and that he stopped working in April 2004. Associated private medical records include a September 2006 report which contains an Axis I diagnosis of schizoaffective disorder, and an Axis II diagnosis of borderline personality disorder with antisocial features. 

A VA PTSD examination report, dated in August 2011, shows that the examiner indicated that the Veteran's claims file had been reviewed. The Axis I diagnosis was schizoaffective disorder, and the Axis II diagnosis was personality disorder NOS. The examiner concluded the following: the Veteran had a personality disorder during adolescence, as a result of a difficult childhood in the foster care system, as demonstrated by repeatedly running away from structured situations, and homelessness, and substance abuse following the death of his wife prior to military service. The Veteran has substance abuse problem prior to military service which apparently became more pronounced during and after military service. He has a post-military problem with polysubstance abuse, although he reports that he has maintained sobriety over the last few years. He has previously been judged to malinger mental disorder symptoms (which only provides some more limited evidence against this claim). His primary diagnosis is schizoaffective disorder, with notable symptoms of pervasive mistrust, paranoia, and auditory hallucinations. He has significant psychosocial dysfunction due to the symptoms of both his schizoaffective disorder and his personality disorder, however, the principal source of his severe psychosocial dysfunction is best characterized as coming from his schizoaffective disorder. It was found to be not possible to connect the Veteran's schizoaffective disorder symptoms to his service. While it is not possible to rule out PTSD, it is less likely as not that PTSD symptoms are a significant source of his chronic psychosocial difficulties. 

In February 2012, the Board remanded the claim. The Board stated the following: the August 2011 opinion "is not helpful in resolving the appeal." The examiner's conclusion, that it was less likely than not that PTSD symptoms were a "significant source" of his psychosocial difficulties, "implies that it might play some part." With regard to the examiner's conclusion that, "It is not possible to connect the Veteran's schizoaffective disorder symptoms to his service," although it appeared that the examiner might be saying that there is no nexus, he might also be saying that he could not speculate as to such a nexus. The examiner did not offer a rationale on this conclusion (i.e., he did not state why it was impossible for such a link to be present). The Board therefore directed that the Veteran should be scheduled for a VA psychiatric examination, for the purposes of determining the etiology of any currently present acquired psychiatric disability.

In April 2012, the Veteran was afforded another VA examination. The report of that examination shows the following: the Veteran's Axis I diagnosis was schizoaffective personality disorder. His Axis II diagnosis was personality disorder NOS. The Veteran did not meet the full criteria for PTSD (criteria C was not present). His symptoms are best characterized as a schizoaffective disorder. An unstructured and unstable childhood living situation and early history of drug use arguably are premorbid factors that predisposed him for a psychiatric disorder at the onset of service. Following his service, his difficulty adjusting to civilian life, coupled with the lack of supportive interpersonal relationships, may have prevented him from recovering from past military stressors as well as coping with daily life stressors. Due to pre-existing psychiatric disturbances prior to military service, and an inconsistent self-report, it is unclear if the Veteran's schizoaffective disorder is at least as likely as not related to his honorable period of service. Such an opinion cannot be made without resort to mere speculation. 

As an initial matter, the Board finds that the Veteran is not always an accurate historian. The Veteran has been diagnosed with schizoaffective disorder, which is a psychosis. 38 C.F.R. § 3.384. This is evidence that he is responding to internal stimuli. His history has been noted to include an exaggeration of symptomatology, and malingering. See e.g., VA hospital reports, dated in April 2006 ("per psych testing in ASH and Temple VA"); see also progress notes, dated in May and November of 2006, December 2013, March 2014; VA examination reports, dated in August 2011 and April 2012 (noting inconsistently reported histories, to include with regard to physical, sexual, and emotional abuse, and a history of findings as to malingering). The Board therefore finds that he is not an accurate historian. See Wilson v. Derwinski, 2 Vet. App. 16, 19-20 (1991); Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (holding that in weighing credibility, VA may consider interest, bias, inconsistent statements, bad character, internal inconsistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness).

With regard to PTSD, the Board finds that the evidence is insufficient to show that the Veteran currently has PTSD. In fact, there is highly significant medical evidence against such a finding, as noted above. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998) (under 38 U.S.C.A. § 1110 and § 1131, an appellant must submit proof of a presently existing disability resulting from service in order to merit an award of compensation). In particular, the April 2012 VA PTSD examination report shows that the examiner concluded that the Veteran does not have PTSD. This opinion is considered highly probative, as it is shown to have been based on a review of the Veteran's claims file, and it is accompanied by a sufficient explanation and findings. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000); Neives- Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Accordingly, the Board finds that the preponderance of the evidence is against the claim, and that the claim must be denied.

In reaching this decision, the Board has considered several findings of PTSD in a number of VA reports, and that the August 2011 VA examiner indicated that PTSD could not be ruled out. However, apart from the August 2011 VA examination, none of these reports are shown to have been based on a review of the Veteran's claims file or any other detailed and reliable medical history. Prejean. Furthermore, these reports all warrant less probative weight than the April 2012 VA examination report (in which the examiner determined that the Veteran does not have PTSD) as none of them contain an analysis or discussion as to whether or not all of the criteria for PTSD were met. See Neives-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Quick Reference to the Diagnostic Criteria from DSM-IV at 209-11 (American Psychiatric Association 1994); see also Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (recognizing the Board's "authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence"). Simply stated, the best medical evidence in this case (in some cases the Veteran's own prior statements) provides highly probative evidence against the Veteran's claim. Accordingly, the claim must be denied.

With regard to the claim for an acquired psychiatric disorder other than PTSD, the Board finds that the claim must be denied. The Veteran's service treatment records have been discussed. They show that treatment for alcohol abuse in September 1991. Given the foregoing, a chronic condition is not shown during service. See 38 C.F.R. § 3.303(b). The earliest post-service medical evidence of treatment for psychiatric symptoms is dated in February 2000, which is over 61/2 years after his eligible period of active duty service (ending on May 1, 1993), and there is no competent opinion of record in support of the claim. In this regard, the April 2012 VA examiner concluded that she was unable to provide a nexus opinion without resorting to speculation, due to pre-existing psychiatric disturbances prior to military service, and an inconsistent self-report. Therefore, the examiner provided a sufficient rationale for the inability to provide an etiological opinion. Jones v. Shinseki, 23 Vet. App. 383 (2010). Current regulations provide that service connection may not be based on a resort to speculation or even remote possibility. See 38 C.F.R. § 3.102 (2014); Stegman v. Derwinski, 3 Vet. App. 228, 230 (1992); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992). There is no medical evidence to show that a psychosis was manifest to a compensable degree within one year of separation from service. See 38 C.F.R. §§ 3.307, 3.309. Finally, with regard to the application of 38 C.F.R. § 3.317, the Board finds that the preponderance of the evidence is against the claim that the Veteran has an acquired psychiatric disorder, to include memory loss, due to an undiagnosed illness or a medically unexplained chronic multisymptom illness. The May 2006 VA examination report shows that the examiner stated that the Veteran does not have an undiagnosed illness, and there is no competent opinion of record to show that he has the claimed symptoms due to an undiagnosed illness, or a diagnosed medically-unexplained chronic multi-symptom illness. 

To the extent that he is shown to have acquired psychiatric disorders, these are diagnosed conditions, and service connection therefore may not be granted for these symptoms on this basis. Stankevich v. Nicholson, 19 Vet. App. 470, 472 (2006); Gutierrez v. Principi, 19 Vet. App. 1, 10 (2004). 

Given the foregoing, the Board finds that the Veteran is not shown to have a "qualifying chronic disability" involving the claimed symptoms. See 38 C.F.R. § 3.317(a)(2)(i). Accordingly, the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 are not applicable. Based on the foregoing, the Board finds that the preponderance of the evidence is against the claim, and that the claim must be denied on any basis.

In reaching this decision, as the Board's February 2012 remand discounted the probative value of the August 2011 VA examiner's conclusion, the Board has not afforded the etiological opinions in the August 2011 VA examination report any probative value. 

With regard to the appellant's own contentions, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, this falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Acquired psychiatric disorders are not the type of conditions that are readily amenable to mere lay diagnosis or probative comment regarding their etiology, as the evidence shows that specific findings are needed to properly assess and diagnose these disorders. Jandreau; Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). The issue on appeal is based on the contention that an acquired psychiatric disorder, to include PTSD, is related to the Veteran's service. The Board has determined that PTSD, and an undiagnosed illness, and a diagnosed medically-unexplained chronic multi-symptom illness, are not currently shown, and that claimed condition is not the types of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology. Id. The Veteran's service treatment reports and post-service medical records have been discussed. An acquired psychiatric disorder is not shown until well after separation from service, and the Veteran has been found not to be credible. Given the foregoing, the Board finds that the medical evidence outweighs the appellant's contentions to the effect that he has the claimed condition due to his service. Madden v. Gober, 125 F. 3d 1477, 1481 (Fed. Cir. 1997). 

As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001).

II. Duty to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. §§ 3.159, 3.326(a).

Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ) of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id. 

Neither the Veteran nor his representative has alleged prejudice with respect to notice, as is required. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009). None is found by the Board. Indeed, VA's duty to notify has been more than satisfied. The Veteran was notified via letters dated in April 2006 and July 2010, of the criteria for establishing service connection, the evidence required in this regard, and his and VA's respective duties for obtaining evidence. He also was notified of how VA determines disability ratings and effective dates if service connection is awarded. These letters accordingly addressed all notice elements. Nothing more was required. The matter was then readjudicated as recently as April 2014. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an statement of the case or supplemental statement of the case, is sufficient to cure a timing defect). 

The RO also provided assistance to the appellant as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. It appears that all known and available service treatment reports, and post-service records relevant to the issue on appeal have been obtained and are associated with the Veteran's claims files. The RO has obtained the Veteran's VA and non-VA records, and SSA records. The Veteran has been afforded two examinations, most recently he was examined in April 2012. 

In February 2012, the Board remanded the claim. The Board directed that the Veteran be afforded an examination, and that an etiological opinion be obtained. To that end, when VA undertakes to provide a VA examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the April 2012 VA examination obtained in this case is sufficient. Although the examiner was unable to provide a nexus opinion without resorting to speculation, the examiner provided a sufficient explanation for this conclusion, as discussed supra. Jones v. Shinseki, 23 Vet. App. 383 (2010). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4). Under the circumstances, the Board finds that there has been substantial compliance with its remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the veteran are to be avoided).

In April 2013, the Veteran was provided an opportunity to set forth his contentions during a hearing before a DRO. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the U.S. Court of Appeals for Veterans Claims recently held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, during the April 2013 DRO hearing, the DRO identified the issue on appeal. Also, information was solicited regarding the etiology and severity of his disability. The testimony did not reflect that there were any outstanding medical records available that would support his claim. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim" were also fully explained. See Bryant, 23 Vet. App. at 497. Moreover, the hearing discussion did not reveal any evidence that might be available that had not been submitted. As such, the Board finds that, consistent with Bryant, the DRO complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board may proceed to adjudicate the claims based on the current record. 

Based on the foregoing, the Board finds that the Veteran has not been prejudiced by a failure of VA in its duty to assist, and that any violation of the duty to assist could be no more than harmless error. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). 

ORDER

Service connection for an acquired psychiatric disorder, to include PTSD, is denied.

____________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs