**John W. STEGMAN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

**No. 90–1221.**

United States Court of Veterans Appeals.

Submitted June 1, 1992.

Decided Sept. 14, 1992.

John W. Stegman, pro se.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, Washington, D.C., were on the pleadings for appellee.

Before FARLEY, MANKIN and IVERS, Associate Judges.

MANKIN, Associate Judge:

Appellant, John W. Stegman, seeks reversal of an August 29, 1990, Board of Veterans' Appeals (BVA or Board) decision that denied service connection for cancers of the larynx and urinary bladder, and for lymphoma. *John W. Stegman*, BVA 90–46490 (Aug. 29, 1990). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)). We affirm the BVA decision.

### I.

Appellant served in the Army from April 1944 to August 1946. R. at 1. During his tour of duty, he served with the American forces that occupied Nagasaki, Japan, at the close of World War II. R. at 105, 171. The only disabilities that were officially noted upon his separation from service were a fractured finger incurred during service and a history of rheumatic fever. R. at 10–11.

In 1985 appellant was examined for signs of chronic obstructive pulmonary disease (COPD); about the same time, he was diag-

nosed with cancer of the glottis. R. at 21–23. Dr. King, an examining physician, noted, "Significant for a diagnosis of heart murmur in WWII and exposure to radiation when his unit cleaned up Nagasaki," and, "History of exposure to intense radiation in Nagasaki possibly contributing to present illness." R. at 23. Another treating physician, Dr. Bonacorsi, noted that appellant had smoked two packs of cigarettes per day. Dr. Bonacorsi recorded impressions of COPD and carcinoma of the larynx. R. at 24.

Appellant underwent a total laryngectomy in July 1985. R. at 35, 39. In 1986 blood was noted in his urine, R. at 51, an event which ultimately led to a diagnosis of cancer in the bladder and urethra. R. at 61, 64–65. A January 1987 pathology report noted cancerous tissue in appellant's bladder and lymph nodes. R. at 80. He began a course of chemotherapy in April 1987, R. at 96, which apparently put the cancer in remission. R. at 103.

In 1988 appellant filed a claim for service connection for "cancer of bladder & larynx and lymphomas [secondary] to occupation of Nagasaki...." R. at 13. In response, the St. Louis, Missouri, Regional Office (RO) contacted the Defense Nuclear Agency to request an evaluation of the veteran's wartime radiation exposure. R. at 130. *See* 38 C.F.R. § 3.311b(a)(2)(ii) (1991). The agency responded that appellant's maximum possible radiation exposure was less than one rem, and that the actual exposure was likely to have been significantly less. R. at 130. The RO then contacted the Director of Compensation and Pension for an evaluation of the likelihood that the cancer was the result of radiation exposure. R. at 133–34. *See* 38 C.F.R. § 3.311b(c). The Associate Deputy Chief Medical Director, Dr. Windship, responded that "it is unlikely that his diseases were caused by radiation while in military service." R. at 135. After considering the evidence, the rating board denied appellant's claims for service-connected disability (except for residuals of a fractured finger, rated at 0%) in October 1989. R. at 138–40. In the veteran's appeal to the BVA, his representative contended that Dr. Windship's opinion concerning causation was equivocal, and that sufficient doubt was present to justify the award of service connection. R. at 152–53.

At a personal hearing conducted at the RO in March 1990, appellant testified that his bladder cancer had spread to his lymph nodes, for which he had undergone surgery in 1989. R. at 169. He also testified that he had smoked about a carton of cigarettes per week for about 36 years, but that he had no history of significant industrial exposure to radiation or chemicals. R. at 174–75. At the hearing, he submitted a letter from his treating physician, Dr. Zenisek, who stated,

> I believe that it is very possible that Mr. Stegman's exposure to ionized radiation during his service in the American military may have contributed to both his carcinoma of the larynx and his carcinoma of the bladder. It is very possible that the genetic abnormalities and early malignant changes necessary to create these cancers were present prior to the forty year time limit for the presumption of service connection for radiation cases.

R. at 178. Also, Dr. Bonacorsi opined that "Mr. Stegman's carcinoma of the larynx had probably been active approximately a year before its diagnosis [in 1985]." R. at 179.

The BVA issued a decision in August 1990 that denied service connection for all three of the conditions for which appellant had claimed service connection, stating, "No evidence of lymphoma has ever been diagnosed." *Stegman*, BVA 90–46490, at 5. The Board further stated:

> The low level radiation to which the veteran might have been exposed in 1945 would be insufficient to have caused laryngeal cancer in 1985 or bladder cancer in 1987. Actually the rather long-term heavy smoking would be a much more likely factor in the production of laryngeal cancer and urinary bladder cancer....

*Id.*

## II.

■ A determination regarding when and how a disorder was incurred or aggra-

vated is a finding of fact subject to review under the "clearly erroneous" standard; the Court may not reject the BVA's conclusion if it is supported by a plausible basis in the record. *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1991).

■ In this case, the record clearly provides a plausible basis for the Board's conclusion that appellant's disabilities were not incurred in or aggravated by service. Here, even the medical evidence favorable to appellant's claim does little more than suggest a possibility that the veteran's illnesses *might* have been caused by his wartime radiation exposure.

■ Further, despite his contentions, appellant was not entitled to the benefit of a 40–year presumption of service connection for any of his cancerous disorders. True, Congress has enacted liberalized provisions that permit veterans who participated in "radiation-risk activities" during service to establish service connection for certain specified cancerous diseases without direct proof that the disease was incurred in or aggravated by service. *See* 38 U.S.C. § 1112(c)(2) (formerly § 312(c)(2)); 38 C.F.R. § 3.309(d)(2) (1991); *Wikman v. Derwinski*, 2 Vet.App. 272, 274 (1992). Generally, to establish that such an illness is service connected, a "radiation-exposed" veteran need only show that his or her disease became manifest to a compensable degree within "the 40–year period beginning on the last date on which the veteran participated in a radiation-risk activity." 38 U.S.C. § 1112(c)(3); *but see* 38 U.S.C. § 1113 (formerly § 313) (presumption rebuttable in certain circumstances). The list of diseases to which these special provisions are applicable is codified at subparagraph (c)(2). The list does not include cancer of the larynx or cancer of the urinary bladder.

We note that the statutory list *does* include "lymphomas." We also note, however, that appellant's service in Nagasaki ended in July 1946. R. at 105. As he has not contended that he was engaged in any other radiation-risk activities, his 40–year presumptive period would have expired no later than July 1986. *See also* 38 U.S.C.

§ 1112(c)(4)(B)(ii) (occupation of Nagasaki ended July 1, 1946). The record contains no diagnosis of lymphatic cancer prior to January 1987. Whether or not appellant's lymphatic cancer might be classified as "lymphoma" (the Board apparently concluded that it could not), there is no evidence in the record that appellant suffered from such a disorder within the applicable presumptive period.

We also find no indication in the record that the VA failed to correctly adjudicate appellant's claim for urinary bladder cancer in accordance with the regulations applicable to radiogenic diseases. *See* 38 C.F.R. § 3.311b; *Douglas v. Derwinski*, 2 Vet. App. 435, 440 (1992).

### III.

After considering appellant's informal brief and the Secretary's motion for summary affirmance, and after reviewing the record, the Court holds that appellant has not demonstrated that the BVA committed either legal or factual error that would warrant reversal or remand. "Although the BVA decision is not a model of draftsmanship, we find that it contains a plausible basis for the BVA's factual determination in this case and that the BVA has provided adequate reasons and bases for its decision." *Hillyard v. Derwinski*, 1 Vet.App. 349, 352 (1991) (citing *Gilbert*). Summary disposition is warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23 (1990).

Appellant's motion to appear before the Court is denied. The Secretary's motion for summary affirmance is granted and the decision of the BVA is AFFIRMED.