Citation Nr: 1722249 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 05-34 163 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for nerve damage of the left upper extremity.

2. Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD).

3. Entitlement to service connection for a disability manifested by chronic pain.

4. Entitlement to a disability rating greater than 30 percent for degenerative joint disease of the left shoulder.

5. Entitlement to a total disability rating based on individual unemployability (TDIU) due exclusively to service-connected degenerative joint disease of the left shoulder.



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Michael T. Osborne, Counsel


INTRODUCTION

The Veteran had active service from May 1971 to May 1973.

This case has a long procedural history. It comes before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama, which assigned a higher 10 percent rating effective October 18, 2004, for the Veteran's service-connected degenerative joint disease of the left shoulder. The Veteran disagreed with this decision in February 2005. A hearing was held at the RO before a Decision Review Officer (DRO) in September 2005 and a copy of the hearing transcript has been added to the record. The Veteran perfected a timely appeal in October 2005. A Travel Board hearing was held at the RO in June 2008 before the undersigned Veterans Law Judge and a copy of the Board hearing transcript also has been added to the record.

In an October 2007 rating decision, the RO assigned a higher 30 percent rating effective October 18, 2004, for the Veteran's service-connected degenerative joint disease of the left shoulder. Because that is not the maximum disability rating available, this claim remains in appellate status. See AB v. Brown, 6 Vet. App. 35 (1993).

In October 2008, the Board denied the Veteran's increased rating claim for degenerative joint disease of the left shoulder. The Veteran, through an attorney, and VA's Office of General Counsel appealed the Board's October 2008 decision to the United States Court of Appeals for Veterans Claims (Court) by filing a Joint Motion for Remand (Joint Motion). The Court granted the Joint Motion in July 2009, vacating and remanding the Board's October 2008 denial of an increased rating for degenerative joint disease of the left shoulder.

Pursuant to the Court's July 2009 decision granting the Joint Motion, the Board remanded this matter in October 2009 to the Agency of Original Jurisdiction (AOJ) for additional development. A review of the claims file shows that there has been substantial compliance with the Board's remand directives. The Board directed that the AOJ send appropriate VCAA to the Veteran and his then-attorney, obtain updated treatment records for the Veteran, including his Social Security Administration (SSA) records, and schedule the Veteran for appropriate examinations to determine the impact of his service-connected disabilities, alone or in combination, on his employability. The requested notice was mailed to the Veteran and his then-attorney in November 2009, September and December 2010, and in June 2011. The identified records, including SSA records, subsequently were added to the record. And the requested examinations occurred in January and August 2011. See Stegall v. West, 11 Vet. App. 268 (1998); see also Dyment v. West, 13 Vet. App. 141 (1999) (holding that another remand is not required under Stegall where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

This matter next is on appeal from a March 2012 rating decision in which the RO determined that new and material evidence had not been received sufficient to reopen a previously denied claim of service connection for nerve damage of the left upper extremity (which was characterized as nerve damage (previously claimed as neurological abnormality, left arm, nerve problem, left arm, wrist, and hand (associated with degenerative joint disease, left shoulder)). The RO also denied the Veteran's claims of service connection for an acquired psychiatric disability, to include PTSD (which was characterized as PTSD), and for a disability manifested by chronic pain (which was characterized as chronic pain syndrome (also claimed as side effect from pain pills)). The Veteran disagreed with this decision in January 2013. He perfected a timely appeal in January 2015 in a letter from his then-attorney which was accepted in lieu of a formal substantive appeal (VA Form 9).

The Board remanded this appeal to the AOJ again in July 2015. A review of the claims file shows that there has been substantial compliance with the Board's July 2015 remand directives. The Board recharacterized the Veteran's increased rating claim for degenerative joint disease of the left shoulder to include a TDIU claim. The Board directed that the AOJ send a Statement of the Case (SOC) to the Veteran and his then-attorney on the issues of whether new and material evidence had been received to reopen a claim of service connection for nerve damage of the left upper extremity (which was characterized as left arm nerve damage), entitlement to service connection for an acquired psychiatric disability, to include PTSD, and entitlement to service connection for a disability manifested by chronic pain (which was characterized as chronic pain syndrome). The Board also directed that the AOJ attempt to obtain updated treatment records for the Veteran and schedule him for appropriate examinations to determine the current nature and severity of his degenerative joint disease of the left shoulder and the impact of this disability on his employability. Because the Veteran already had perfected a timely appeal on these claims, the AOJ promulgated a supplemental statement of the case (SSOC) in May 2016 on the issues of whether new and material evidence had been received to reopen a claim of service connection for nerve damage of the left upper extremity, entitlement to service connection for an acquired psychiatric disability, to include PTSD, and entitlement to service connection for a disability manifested by chronic pain. The AOJ also attempted to obtain the identified records. And the requested examinations occurred in April and May 2016. See Stegall, 11 Vet. App. at 268.

The Board notes that, in a January 2007 rating decision, the AOJ denied the Veteran's claim of service connection for nerve damage of the left upper extremity (which was characterized as neurological abnormality left arm). The Veteran did not appeal this decision and it became final. See 38 U.S.C.A. § 7104 (West 2014). He also did not submit any statements relevant to this claim within 1 year of the January 2007 rating decision which would render this decision non-final for VA purposes under 38 C.F.R. § 3.156(b). See Buie v Shinseki, 24 Vet. App. 242, 251-52 (2011) (explaining that, when statements are received within one year of a rating decision, the Board's inquiry is not limited to whether those statements constitute notices of disagreement but whether those statements include the submission of new and material evidence under 38 C.F.R. § 3.156(b)).

The Board does not have jurisdiction to consider a claim that has been adjudicated previously unless new and material evidence is presented. See Barnett v. Brown, 83 F.3d 1380 (Fed. Cir. 1996). Therefore, the issue of whether new and material evidence has been received to reopen a claim of service connection for nerve damage of the left upper extremity is as stated on the title page. Regardless of the RO's actions, the Board must make its own determination as to whether new and material evidence has been received to reopen this claim. That is, the Board has a jurisdictional responsibility to consider whether a claim should be reopened. See Jackson v. Principi, 265 F.3d 1366, 1369 (Fed. Cir. 2001). In summary, having reviewed the record evidence, the Board finds that the issues on appeal should be characterized as stated on the title page of this decision.

The Board next notes that, in February 2017, the Veteran's attorney filed a motion to withdraw as his representative before VA on the grounds that the Veteran had terminated the attorney-client relationship. The Board finds that the attorney's motion to withdraw provides sufficient good cause to accept her withdrawal as the Veteran's representative under the regulations governing withdrawal of a representative. See 38 C.F.R. § 20.608(b)(2) (2016). Thus, the Veteran is considered unrepresented before VA.

This appeal was processed using the Virtual VA (VVA) and Virtual Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.


FINDINGS OF FACT

1. In a rating decision dated on January 19, 2007, and issued to the Veteran and his service representative on January 24, 2007, the RO denied the Veteran's claim of service connection for nerve damage of the left upper extremity (which was characterized as neurological abnormality, left arm).

2. The evidence received since the January 2007 rating decision is either cumulative or redundant of evidence previously submitted in support of the Veteran's claim of service connection for nerve damage of the left upper extremity and does not relate to an unestablished fact necessary to substantiate the claim.

3. The Veteran's claimed in-service stressor is incapable of corroboration.

4. The record evidence shows that the Veteran does not experience any current disability due to an acquired psychiatric disability, to include PTSD, or chronic pain which could be attributed to active service or any incident of service.

5. The record evidence shows that the Veteran's service-connected degenerative joint disease of the left shoulder is manifested by, at worst, complaints of severe pain and recurrent dislocation of the scapulohumeral joint with frequent episodes and guarding of all arm movements.

6. Service connection only is in effect for degenerative joint disease of the left shoulder, evaluated as 30 percent disabling effective October 18, 2004; the Veteran's combined disability evaluation for compensation is 30 percent effective October 18, 2004.

7. The record evidence does not show that the Veteran is precluded from securing or following a substantially gainful occupation solely by reason of his service-connected degenerative joint disease of the left shoulder.


CONCLUSIONS OF LAW

1. The January 2007 RO decision, which denied the Veteran's claim of service connection for nerve damage of the left upper extremity, is final. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. §§ 20.302, 20.1103 (2016).

2. Evidence received since the January 2007 RO decision in support of the claim of service connection for nerve damage of the left upper extremity, is not new and material; accordingly, this claim is not reopened. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2016).

3. An acquired psychiatric disability, to include PTSD, was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2016).

4. A disability manifested by chronic pain was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2016).

5. The criteria for a disability rating greater than 30 percent for degenerative joint disease of the left shoulder have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.71a, Diagnostic Code (DC) 5003-5202 (2016).

6. The criteria for a TDIU due exclusively to service-connected degenerative joint disease of the left shoulder have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.16(a) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

The Veteran in this case has not referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claims. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015, cert denied, U.S. Oct. 3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).

New and Material Evidence Claims

In January 2007, the AOJ denied, in pertinent part, the Veteran's claim of service connection for nerve damage of the left upper extremity. A finally adjudicated claim is an action which has been allowed or disallowed by the agency of original jurisdiction, the action having become final by the expiration of one year after the date of notice of an award or disallowance, or by denial on appellate review, whichever is the earlier. 38 U.S.C.A. §§ 7104, 7105 (West 2014); 38 C.F.R. §§ 3.160(d), 20.302, 20.1103 (2016). The Veteran did not initiate an appeal of the January 2007 rating decision and it became final. As noted above, the Veteran also did not submit any statements relevant to this claim within 1 year of the January 2007 rating decision which would render this decision non-final for VA purposes under 38 C.F.R. § 3.156(b). See Buie, 24 Vet. App. at 251-52.

The claim of service connection for nerve damage of the left upper extremity may be reopened if new and material evidence is received. Manio v. Derwinski, 1 Vet. App. 140 (1991). The Veteran filed an application to reopen his previously denied service connection claim for nerve damage of the left upper extremity on a VA Form 21-4138 which was received by the AOJ on January 24, 2008. New and material evidence is defined by regulation. See 38 C.F.R. § 3.156(a) (2016). In determining whether evidence is new and material, the credibility of the new evidence is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992).

With respect to the Veteran's application to reopen a claim of service connection for nerve damage of the left upper extremity, the evidence before VA at the time of the prior final AOJ decision in January 2007 consisted of his service treatment records and post-service private treatment records. The AOJ found that a review of this evidence showed no complaints, treatment, or diagnosis of nerve damage of the left upper extremity which could be attributed to active service or any incident of service. Thus, the claim was denied.

The newly received evidence includes additional VA and private treatment records and the Veteran's lay statements and hearing testimony. Despite the Veteran's assertions to the contrary, none of the newly received evidence shows that he currently experiences disability due to nerve damage of the left upper extremity which could be attributed to active service or any incident of service. For example, VA peripheral nerves conditions Disability Benefits Questionnaire (DBQ) in April 2016 shows that the Veteran essentially refused to cooperate with the VA examiner attempting to conduct this examination in order to determine whether he experienced current disability due to nerve damage of the left upper extremity which could be attributed to active service or any incident of service. The Veteran refused to participate in another electromyograph (EMG) which the VA examiner thought necessary to diagnose him. This examiner stated that the Veteran's reported severe neurological symptoms were inconsistent with a review of his recent treatment records. This examiner also stated "an adequate examination could not be performed because of lack of cooperation from the Veteran due to reported fear of increase[d] pain." This examiner finally noted that he could not provide any opinion concerning the contended etiological relationship between the Veteran's claimed nerve damage of the left upper extremity without resorting to speculation because the Veteran refused to have another EMG or nerve conduction study performed. He concluded that no medical opinion could be provided and no condition could be diagnosed because there was "insufficient evidence to warrant or confirm a current diagnosis of acute or chronic" nerve damage of the left upper extremity.

With respect to the Veteran's application to reopen a claim of service connection for nerve damage of the left upper extremity, the Board notes that the evidence which was of record in January 2007 did not show that he experienced any current disability due to his claimed nerve damage of the left upper extremity which could be attributed to active service or any incident of service. Again, despite the Veteran's assertions to the contrary, a review of the record evidence submitted since January 2007 still does not indicate that he experiences any current disability due to his claimed nerve damage of the left upper extremity which could be attributed to active service or any incident of service. The newly received medical evidence and the Veteran's statements and hearing testimony are cumulative and redundant of evidence previously considered by VA. In this regard, the Board notes that the Court has held that "[t]he duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). The Veteran must be prepared to meet his obligations by cooperating with VA efforts to provide an adequate medical examination. See Olson v. Principi, 3 Vet. App. 480 (1992). And it is clear from a review of the newly received evidence that the Veteran refused to cooperate at his most recent VA examination conducted in April 2016 for the purpose of determining the nature and etiology of his claimed nerve damage of the left upper extremity.

The Board finally observes that, in Shade v. Shinseki, 24 Vet. App 110 (2010), the Court held that the phrase "raises a reasonable possibility of substantiating the claim" found in the post-VCAA version of 38 C.F.R. § 3.156(a) must be viewed as "enabling" reopening of a previously denied claim rather than "precluding" it. In this case, however, there is no reasonable possibility that the newly received evidence would enable rather than preclude reopening the Veteran's previously denied service connection claim for nerve damage of the left upper extremity. Unlike in Shade, there is no evidence in this case - either previously considered in the January 2007 RO decision, which denied the Veteran's claim of service connection for nerve damage of the left upper extremity (which was characterized as neurological abnormality, left arm), or received since that decision became final - which demonstrates that he experiences current disability due to his claimed nerve damage of the left upper extremity which could be attributed to active service or any incident of service. Thus, the analysis of new and material evidence claims that the Court discussed in Shade is not applicable to the Veteran's request to reopen his previously denied service connection claim for nerve damage of the left upper extremity. In summary, as new and material evidence has not been received, the previously denied claim of service connection for nerve damage of the left upper extremity is not reopened.

Service Connection Claims

The Veteran contends that he incurred an acquired psychiatric disability (which he characterizes as PTSD) and a disability manifested by chronic pain (which he characterizes as chronic pain syndrome) in active service. He specifically contends that he served on secret missions in the Republic of Vietnam while on active service which caused or contributed to his claimed PTSD. He alternatively contends that unspecified "pain pills" possibly prescribed to treat his service-connected degenerative joint disease of the left shoulder caused or aggravated (permanently worsened) his claimed disability manifested by chronic pain.

Factual Background and Analysis

The Board finds that the preponderance of the evidence is against granting the Veteran's claim of service connection for an acquired psychiatric disability, to include PTSD. The Veteran contends that he experienced an in-service stressor while in the Republic of Vietnam which caused or contributed to his current acquired psychiatric disability, to include PTSD. The record evidence does not support his assertions regarding an in-service stressor or that he experiences any current acquired psychiatric disability which could be attributed to active service or any incident of service. It shows instead that his claimed in-service stressor is incapable or corroboration and inherently incredible. It also shows that he does not experience any current acquired psychiatric disability, to include PTSD, based on a corroborated in-service stressor, which could be attributed to active service or any incident of service.

The Board notes initially that the Veteran has not reported consistently what in-service experiences constituted his claimed in-service stressor(s). For example, the Veteran contended in statements on a November 2010 VA Form 21-0781a that his in-service stressor occurred when he was personally assaulted by several other service members while on duty at Guantanamo Naval Base between December 1971 and April 1972. He subsequently contended in statements on a January 2015 VA Form 21-0781a that his in-service stressor occurred when he and another U.S. Navy SEAL commander "shut down the Ho Chi Minh Trail" in the Republic of Vietnam between May 1971 and May 1973 while he was operating near the demilitarized zone (or DMZ) in Vietnam. He then asserted in statements on a July 2015 VA Form 21-0781a that his in-service stressor occurred when was working as a U.S. Marine attached to a U.S. Navy SEAL unit in the Republic of Vietnam between May 1972 and April 1973. He stated that he was in combat with these Navy SEALs, rescuing at least one of them by pulling him out of the water and into a speed boat that he (the Veteran) was operating. He also stated, "I was a forward air controller in the mountains of the DMZ throwing grenades down on the [Vietcong] operations with successful destructive results." He further stated that he operated the .50 caliber machine gun located on the gun boat that he operated while in Vietnam, his service records were at the Pentagon, and his combat service was not reflected on his DD Form 214.

Having reviewed the record evidence, the Board finds that none of the Veteran's alleged in-service stressors are capable of corroboration by the Joint Services Records Research Center (JSRRC). Nor are any of his statements regarding his alleged in-service stressors considered credible save for his statement that his alleged combat service in the Republic of Vietnam was not reflected on his DD Form 214. In other words, the only true statement presented by the Veteran on several versions of VA Form 21-0781a that he submitted in support of his service connection claim for PTSD is the statement that his DD Form 214 does not reflect combat service. The Board notes here that the Veteran's DD Form 214 shows that he had no foreign and/or sea service while on active service between May 1971 and May 1973. The Veteran's service personnel records, including his DD Form 214, also do not reflect that he served in combat anywhere in the world, whether at Guantanamo Naval Base or in the Republic of Vietnam, at any time during his active service. His DD Form 214 shows only that he spent his entire period of active service deployed stateside as a radio operator and never participated in combat or was awarded any combat citations. Thus, he is not considered a combat Veteran and the additional consideration normally afforded combat Veterans in assessing the credibility of a claimed in-service stressor is not applicable in this case. See generally 38 U.S.C.A. § 1154(b) (West 2014); 38 C.F.R. § 3.304(f). 

To the extent that the Veteran is suggesting in his multiple (and conflicting) stressor statements that his military records showing combat service somehow are classified or remain at the Pentagon, the Board notes in this regard that the Department of Defense (DoD) long ago informed VA that it had declassified all of the information available about combat operations conducted in the Republic of Vietnam while the U.S. Armed Forces operated there. The reports of the overseas military adventures, to include combat, described by the Veteran in his multiple and conflicting stressor statements, to include being assaulted by other service members while at Guantanamo Naval Base or "shutting down the Ho Chi Minh trail" or otherwise operating alongside U.S. Navy SEALs on secret missions in Vietnam, would not be considered credible. In other words, none of the Veteran's alleged in-service stressors can be considered credible because they are inconsistent with the facts and circumstances of his stateside non-combat active service. Thus, the Board finds that the Veteran's lay statements regarding his alleged in-service stressors simply are not credible and, as such, these events cannot support a valid diagnosis of PTSD. See 38 C.F.R. § 3.304(f).

The medical evidence also does not support granting service connection for an acquired psychiatric disability, to include PTSD. Despite the Veteran's assertions to the contrary, this evidence shows that he does not experience any current acquired psychiatric disability, to include PTSD, which could be attributed to active service or any incident of service. See 38 C.F.R. §§ 3.303, 3.304. For example, the Veteran's available service treatment records show no complaints of or treatment for an acquired psychiatric disability at any time during active service. The Board notes that the absence of contemporaneous records does not preclude granting service connection for a claimed disability. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (finding lack of contemporaneous medical records does not serve as an "absolute bar" to the service connection claim); Barr v. Nicholson, 21 Vet. App. 303 (2007) ("Board may not reject as not credible any uncorroborated statements merely because the contemporaneous medical evidence is silent as to complaints or treatment for the relevant condition or symptoms"). 

The post-service evidence also does not support granting service connection for an acquired psychiatric disability, to include PTSD. For example, on VA outpatient treatment in September 2004, the Veteran's complaints included "lots of stresses like paying bills and taking care of two children." He was separated from his wife but took care of his 2 children. He denied nightmares, flashbacks, and reexperiencing. He stated that, although he had trained to go to Vietnam, he never actually was deployed there during active service. "He is very emotionally labile and crying during the interview." He was homeless and had used cocaine and marijuana as recently as a week earlier. Mental status examination of the Veteran showed he struggled to his feet and limped due pain, casually dressed, full orientation, loud speech, lots of hand and arm motions and squirming in his chair, thought process "preoccupied with being homeless and having no money," no suicidal or homicidal ideation, delusions, ideas of reference, obsessions/compulsions, or hallucinations, mild anxiety, and fair judgment and insight. The Axis I diagnoses included questionable anxiety disorder due to medical problems and possible PTSD "due to hurricane."

The Board acknowledges here that, following VA outpatient treatment in September 2004, the Axis I diagnoses included "possible" PTSD. Current regulations provide that service connection may not be based on a resort to speculation or even remote possibility. See 38 C.F.R. § 3.102; Stegman v. Derwinski, 3 Vet. App. 228, 230 (1992); and Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992). Accordingly, even if the September 2004 VA outpatient treatment record is viewed in the light most favorable to the Veteran, this evidence does not establish service connection for PTSD.

On VA PTSD examination in October 2010, no relevant complaints were noted. The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. Mental status examination of the Veteran showed he was casually dressed, rapid speech, full orientation, rambling thought process, hyper-religiosity, paranoid ideation, some grandiosity, no delusions or hallucinations, no insight, inappropriate behavior, obsessive/ritualistic behavior, or panic attacks, no suicidal or homicidal ideation, normal memory, fair impulse control, an ability to maintain minimum personal hygiene, and no problems with his activities of daily living. The VA examiner stated that the Veteran's responses to psychological testing "were grossly inconsistent with the information he provided during the clinical interview. He reported none of these symptoms but rather focused on his problems as needing money during the interview." This examiner also noted that, although the Veteran previously reported that he never had gone to Vietnam, he reported at this examination that he had been in combat in Vietnam although his report of combat service was not supported anywhere in the written record. This examiner concluded that the Veteran did not meet the DSM-IV stressor criterion and did not meet the DSM-IV criterion for a diagnosis of PTSD due to a "vague account of trauma and inconsistencies between the Veteran's endorsed symptoms on [testing] and no mental health complaints during the clinical interview."

A service connection claim must be accompanied by evidence which establishes that the claimant currently has a disability. Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection is not warranted in the absence of proof of current disability. The Board has considered whether the Veteran experienced an acquired psychiatric disability, to include PTSD, at any time during the pendency of this appeal. Service connection may be granted if there is a disability at some point during the claim even if it later resolves or becomes asymptomatic. McClain v. Nicholson, 21 Vet. App. 319 (2007). In this case, there is no evidence of an acquired psychiatric disability, to include PTSD, at any time during the pendency of this appeal. In summary, the Board finds that service connection for an acquired psychiatric disability, to include PTSD, is not warranted.

The Board next finds that the preponderance of the evidence is against granting the Veteran's claim of service connection for a disability manifested by chronic pain. Although his argument is not a model of clarity, it appears that the Veteran contends that he incurred a disability manifested by chronic pain (which he characterized as chronic pain syndrome) during active service. It also appears that he alternatively contends that he incurred a disability manifested by chronic pain as a "side effect" of the "pain pills" he apparently takes to treat his service-connected degenerative joint disease of the left shoulder. The record evidence does not support the Veteran's assertions regarding in-service incurrence, a continuity of symptomatology, or any current disability manifested by chronic pain which could be attributed to active service or any incident of service. See 38 C.F.R. §§ 3.303, 3.304. For example, the Veteran's service treatment records show no complaints of or treatment for a disability manifested by chronic pain although they document recurrent left shoulder dislocations on active service. The Board again notes that the absence of contemporaneous records does not preclude granting service connection for a claimed disability. See Buchanan, 451 F.3d at 1337, and Barr, 21 Vet. App. at 303.

The post-service evidence also does not support granting the Veteran's service connection claim for a disability manifested by chronic pain. It shows instead that, although the Veteran has complained of chronic pain in multiple joints since his service separation and although he is diagnosed as having and treated for service-connected degenerative joint disease of the left shoulder, there is no indication that he experiences current disability manifested by chronic pain which is attributable to active service or any incident of service. The Board observes in this regard that the presence of a mere symptom (such as pain) alone, absent evidence of a diagnosed medical pathology or other identifiable underlying malady or condition that causes the symptom, does not qualify as disability for which service connection is available. See generally Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999); vacated in part and remanded on other grounds sub nom., Sanchez-Benitez v. Principi, 239 F.3d 1356 (Fed. Cir. 2001). 

With respect to the Veteran's assertion that he incurred a disability manifested by chronic pain as a result of being prescribed pain medication to treat his service-connected degenerative joint disease of the left shoulder, the Board acknowledges that a review of his post-service treatment records indicates that he was prescribed pain medication to treat his service-connected degenerative joint disease of the left shoulder during the appeal period. The Board finds it highly significant that the Veteran did not report, and his post-service treating clinicians did not indicate, that he experienced any side effects, to include a disability manifested by chronic pain, from the prescription pain medication he was prescribed to treat his service-connected degenerative joint disease of the left shoulder at any time during the appeal period. The Board also finds it unreasonable to infer that taking medication prescribed to treat joint pain associated with service-connected degenerative joint disease of the left shoulder would result in a disability manifested by chronic pain in multiple joints as such an inference would be illogical. See Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact finder.").

The remaining evidence does not show that the Veteran currently experiences any disability due to chronic pain which could be attributed to active service or any incident of service. The Board again notes that a service connection claim must be accompanied by evidence which establishes that the claimant currently has a disability. See Rabideau, 2 Vet. App. at 144, and Brammer, 3 Vet. App. at 225. Service connection is not warranted in the absence of proof of current disability. The Board has considered whether the Veteran experienced a disability due to chronic pain at any time during the pendency of this appeal. Service connection may be granted if there is a disability at some point during the claim even if it later resolves or becomes asymptomatic. See McClain, 21 Vet. App. at 319. In this case, there is no evidence of a disability due to chronic pain at any time during the pendency of this appeal. In summary, the Board finds that service connection for a disability due to chronic pain is not warranted.

As part of the current VA disability compensation claim, in recent statements and sworn testimony, the Veteran has asserted that his symptoms of an acquired psychiatric disability, to include PTSD, and a disability manifested by chronic pain have been continuous since service. He asserts that he continued to experience symptoms relating to an acquired psychiatric disability (depression and PTSD) and a disability due to chronic pain (pain in multiple joints) after he was discharged from service. The Board notes in this regard that the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "PTSD is not the type of medical condition that lay evidence...is competent and sufficient to identify." See Young v. McDonald, 766 F.3d 1348, 1353 (Fed. Cir. 2014). In this case, after a review of all the lay and medical evidence, the Board finds that the weight of the evidence demonstrates that the Veteran did not experience continuous symptoms of either an acquired psychiatric disability, to include PTSD, or a disability manifested by chronic pain after service separation. Further, the Board concludes that his assertion of continued symptomatology since active service, while competent, is not credible.

The Board finds that the Veteran's more recently-reported history of continued symptoms an acquired psychiatric disability, to include PTSD, and a disability manifested by chronic pain of since active service is inconsistent with the other lay and medical evidence of record. Indeed, while he now asserts that his disorders began in service, in the more contemporaneous medical history he gave at the service separation examination, he denied any relevant history or complaints of symptoms. Specifically, the service separation examination report reflects that the Veteran was examined and he was found to be normal clinically. His in-service history of symptoms at the time of service separation is more contemporaneous to service so it is of more probative value than the more recent assertions made many years after service separation. See Harvey v. Brown, 6 Vet. App. 390, 394 (1994) (upholding Board decision assigning more probative value to a contemporaneous medical record report of cause of a fall than subsequent lay statements asserting different etiology); Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (upholding Board decision giving higher probative value to a contemporaneous letter the Veteran wrote during treatment than to his subsequent assertion years later).

The Board notes that the Veteran sought treatment for a myriad of medical complaints since discharge from service, including degenerative joint disease of the left shoulder. Significantly, during that treatment, when he specifically complained of other problems, he never reported complaints related to the low back. Rucker, 10 Vet. App. at 67 (holding that lay statements found in medical records when medical treatment was being rendered may be afforded greater probative value; statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy because the declarant has a strong motive to tell the truth in order to receive proper care).

The Veteran filed a VA disability compensation claim for service connection for recurrent left shoulder dislocation in June 1973, approximately 1 month after service separation, but did not claim service connection for an acquired psychiatric disability, to include PTSD, or a disability manifested by chronic pain or make any mention of any relevant symptomatology. He did not claim that symptoms of his disorders began in (or soon after) service until he filed his current VA disability compensation claims in August 2010. Such statements made for VA disability compensation purposes are of lesser probative value than his previous more contemporaneous in-service histories and his previous statements made for treatment purposes. See Pond v. West, 12 Vet. App. 341 (1999) (finding that, although Board must take into consideration the Veteran's statements, it may consider whether self-interest may be a factor in making such statements). 

These inconsistencies in the record weigh against the Veteran's credibility as to the assertion of continuity of symptomatology since service. See Madden, 125 F.3d at 1481 (finding Board entitled to discount the credibility of evidence in light of its own inherent characteristics and its relationship to other items of evidence); Caluza v. Brown, 7 Vet. App. 498, 512 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (upholding Board's finding that a Veteran was not credible because lay evidence about a wound in service was internally inconsistent with other lay statements that he had not received any wounds in service).

The Board has weighed the Veteran's statements as to continuity of symptomatology and finds his current recollections and statements made in connection with a claim for VA compensation benefits to be of lesser probative value than his previous more contemporaneous in-service history and findings at service separation, the absence of complaints or treatment after service, his previous statements made for treatment purposes, and the record evidence showing no current disability due to an acquired psychiatric disability, to include PTSD, or a disability manifested by chronic pain which could be attributed to active service or any incident of service. For these reasons, the Board finds that the weight of the lay and medical evidence is against a finding of continuity of symptoms since service separation.


Increased Rating Claim

The Veteran contends that his service-connected degenerative joint disease of the left shoulder is more disabling than currently evaluated. He specifically contends that he cannot move his left shoulder or left arm as a result of worsening symptomatology from his service-connected degenerative joint disease of the left shoulder.

The Veteran's service-connected degenerative joint disease of the left shoulder currently is evaluated as 30 percent disabling effective October 18, 2004, by analogy to 38 C.F.R. §§ 4.71a, DC 5003-5202 (arthritis-other impairment of the humerus). See 38 C.F.R. §§ 4.71a, DC 5003-5202 (2016). Disability ratings are assigned under DC 5202 based on the major (dominant) or minor (non-dominant) side. As relevant to this appeal, a 30 percent rating is assigned under DC 5202 for recurrent dislocation of the scapulohumeral joint on the major side. A higher 40 percent rating is assigned for fibrous union of the humerus on the minor side. A 50 percent rating is assigned for non-union of the humerus (false flail joint) on the minor side. A 60 percent rating is assigned for non-union of the humerus (false flail joint) on the major side. A 70 percent rating is assigned for loss of head of humerus (flail shoulder) on the minor side. A maximum 80 percent rating is assigned for loss of head of humerus (flail shoulder) on the major side. Id. Because the Veteran is right-handed, his left shoulder is considered his minor (or non-dominant) side.

Factual Background and Analysis

The Board finds that the preponderance of the evidence is against granting the Veteran's claim for a disability rating greater than 30 percent for degenerative joint disease of the left shoulder. The Veteran contends that this disability is more disabling than currently evaluated. Despite his assertions to the contrary, the record evidence shows that this disability is manifested by, at worst, recurrent dislocation of the scapulohumeral joint with frequent episodes and guarding of all arm movements (i.e., a 30 percent rating under DC 5202). See 38 C.F.R. §§ 4.71a, DC 5003-5202 (2016). For example, on private outpatient treatment in August 2004, the Veteran's complaints included ongoing left shoulder instability. "He has to be careful and he guards in order to protect his shoulder." Physical examination of the left shoulder showed a full range of motion with pain on motion and "some guarding," and increased pain and apprehension with external rotation and abduction. The impressions included chronic instability of the left shoulder with a history of remote dislocation.

On VA joints examination in December 2004, the Veteran's complaints included increasing problems with recurrent left shoulder dislocations which he reduced himself. The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. The Veteran denied any flare-ups of left shoulder pain. The VA examiner stated that it was difficult to evaluate the Veteran's left shoulder because he injured his ribs and they were tender to move around using his shoulder. X-rays of the left shoulder showed mild degenerative joint disease and no evidence of acromioclavicular separation. The diagnosis was mild degenerative joint disease of the left shoulder.

On VA outpatient treatment in February 2005, the Veteran's complaints included recurrent dislocations, clicking, and pain in the left shoulder. Physical examination showed tenderness in the acromioclavicular (AC) joint, a negative cross-chest adduction test, posterior and anterior apprehension, and a markedly positive anterior apprehension test. X-rays showed some degenerative changes in the inferior aspect of the glenoid. The impression was multidirectional instability of the left shoulder.

The Veteran testified at his June 2008 Board hearing that his left shoulder kept him from sleeping at night. See Board hearing transcript dated June 23, 2008, at pp. 5. He also testified that he could not raise his left hand due to his left shoulder pain. Id., at pp. 11.

On VA outpatient orthopedic consult in August 2010, the Veteran's complaints included left shoulder pain and recurrent dislocations. "He states that he is in terrible pain. He is suffering, and he is tired of the pain." Physical examination of the left shoulder (which was referred to incorrectly as the right shoulder) showed a full range of motion with complaints of pain at the extremes of range of motion and "a positive response to the apprehension test." X-rays were within normal limits. The impressions included a history of left shoulder instability.

On VA joints examination in January 2011, the Veteran's complaints included worsening left shoulder pain, stiffness, swelling, weakness, and instability. He rated his left shoulder pain as 7/10 on a pain scale (with 10/10 being the worst imaginable pain). His left shoulder symptoms were "daily and constant." He experienced weekly flare-ups to 10/10 on a pain scale which "will last until he goes to sleep." Physical examination showed he was right-hand dominant, equal deep tendon reflexes bilaterally, 5/5 motor strength, no muscle atrophy or loss of muscle tone, and intact sensation of the bilateral upper extremities. X-rays were normal. The impression was no functional impairment due to service-connected left shoulder injury.

On private outpatient treatment in November 2015, the Veteran's complaints included chronic left shoulder pain. Physical examination showed he was unable to raise his left shoulder more than 30 degrees, 3/5 muscle strength on the left, and difficulty moving his fingers on the left side. The impressions included left shoulder pain with good strength.

On VA shoulder and arm conditions DBQ in April 2016, the Veteran's complaints included everyday left shoulder pain which he rated as 8/10 on a pain scale. The VA examiner reviewed the Veteran's claims file, including his service treatment records and post-service VA treatment records. The Veteran experienced flare-ups of left shoulder pain to 10/10 which occurred 3 times a week and lasted 4 hours at a time. He was unable to move his left shoulder due to his pain. He was right-hand dominant. He experienced functional impairment due to limited range of motion in the left shoulder. Physical examination showed a limited range of motion in the left shoulder, less movement than normal, 5/5 muscle strength, no muscle atrophy, instability, loss of head (flail shoulder), non-union (false flail shoulder), or fibrous union of the humerus, and no malunion of the humerus with moderate or marked deformity. X-rays showed traumatic arthritis. The diagnosis was left glenohumeral joint osteoarthritis.

The Veteran contends that his service-connected degenerative joint disease of the left shoulder is more disabling than currently evaluated. Despite his assertions to the contrary, the record evidence demonstrates that this disability is manifested by, at worst, complaints of severe pain and recurrent dislocation of the scapulohumeral joint with frequent episodes and guarding of all arm movements (i.e., a 30 percent rating under DC 5202). See 38 C.F.R. § 4.71a, DC 5003-5202 (2016). The Board acknowledges that the Veteran has complained of severe left shoulder pain and recurrent left shoulder dislocations throughout the appeal period. It appears that the current 30 percent rating assigned for his service-connected degenerative joint disease of the left shoulder adequately compensates him for these complaints, especially in light of repeated physical examination findings of full strength in the left shoulder and no muscle atrophy during the pendency of this appeal. Critically, the April 2016 VA examiner specifically found no evidence of instability, loss of head (flail shoulder), non-union (false flail shoulder), fibrous union of the humerus, or malunion of the humerus with moderate or marked deformity on physical examination of the left shoulder. The Veteran also has not identified or submitted any evidence demonstrating his entitlement to a disability rating greater than 30 percent for his service-connected degenerative joint disease of the left shoulder. In summary, the Board finds that the criteria for a disability rating greater than 30 percent for degenerative joint disease of the left shoulder have not been met.

TDIU

The Veteran contends that his service-connected degenerative joint disease of the left shoulder precludes him from securing or maintaining substantially gainful employment, entitling him to a TDIU.

Factual Background and Analysis

The Board finds that the preponderance of the evidence is against granting the Veteran's claim of entitlement to a TDIU due exclusively to service-connected degenerative joint disease of the left shoulder. The Veteran contends that his service-connected degenerative joint disease of the left shoulder precludes his employability. The record evidence does not support his assertions regarding the impact of his service-connected degenerative joint disease of the left shoulder on his employability. It shows instead that this service-connected disability does not render him unable to secure and follow a substantially gainful occupation. See 38 C.F.R. §§ 3.340, 3.341, 4.16 (2016). The Board notes initially that the Veteran is in receipt of Social Security Administration (SSA) disability benefits and his SSA records consist of duplicate copies of his VA outpatient treatment records and examination reports. The Board notes in this regard that it is not bound by any determination of SSA. The Board also notes that service connection only is in effect for degenerative joint disease of the left shoulder, evaluated as 30 percent disabling effective October 18, 2004. The Veteran's combined disability evaluation for compensation is 30 percent effective October 18, 2004. Thus, he does not meet the scheduler criteria for a TDIU. See 38 C.F.R. § 4.16(a).

The medical evidence also suggests that, although the Veteran's service-connected degenerative joint disease of the left shoulder interferes with his ability to perform strenuous physical activity, it does not preclude him from securing and following a substantially gainful occupation. The Board acknowledges that, following VA general medical examination in January 2006, the VA examiner opined that the Veteran "may be unable to obtain and sustain gainful employment." This examiner improperly considered both the Veteran's service-connected degenerative joint disease of the left shoulder and his non-service-connected knee and lumbar spine disabilities in discussing his unemployability, however. The Board again notes that service connection only is in effect for degenerative joint disease of the left shoulder. The January 2006 VA examiner's opinion concerning the impact of the Veteran's orthopedic disabilities on his employability also is too speculative to be afforded probative value. See 38 C.F.R. § 3.102; Stegman, 3 Vet. App. at 230, and Tirpak, 2 Vet. App. at 611. Accordingly, the Board finds that the January 2006 VA examiner's opinion is not probative on the issue of whether the Veteran is entitled to a TDIU.

In contrast, following VA general medical examination in August 2011, the VA examiner specifically found that the Veteran was "capable of sedentary to light or moderate duty employment" even with the level of disability which he experienced as a result of his service-connected degenerative joint disease of the left shoulder. This opinion was fully supported. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (finding that a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"). The Veteran also has not identified or submitted any evidence demonstrating his entitlement to a TDIU due exclusively to service-connected degenerative joint disease of the left shoulder. In summary, the Board finds that the criteria for a TDIU due exclusively to service-connected degenerative joint disease of the left shoulder have not been met.


ORDER

As new and material evidence has not been received, the previously denied claim of service connection for nerve damage of the left upper extremity is not reopened.

Entitlement to service connection for an acquired psychiatric disability, to include bipolar disorder and PTSD, is denied.

Entitlement to service connection for a disability manifested by chronic pain is denied.

Entitlement to a disability rating greater than 30 percent for degenerative joint disease of the left shoulder is denied.

Entitlement to a TDIU due exclusively to service-connected degenerative joint disease of the left shoulder is denied.



____________________________________________
L. M. BARNARD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs