Citation Nr: 1736722 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 12-17 725A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a bilateral foot disability.

2. Entitlement to service connection for a bilateral knee disability.

3. Entitlement to service connection for a heart condition, to include as secondary to service connected asbestos pulmonary disease.

4. Entitlement to service connection for hypertension, to include as secondary to service connected asbestos pulmonary disease.

5. Entitlement to service connection for erectile dysfunction, to include as secondary to service connected asbestos pulmonary disease.

6. Entitlement to a disability evaluation in excess of 10 percent for service connected asbestos pulmonary disease.



REPRESENTATION

Appellant represented by: Charles D. Romo, Attorney


WITNESSES AT HEARING ON APPEAL

Appellant, Spouse, and T.H.


ATTORNEY FOR THE BOARD

E. D. Anderson, Counsel


INTRODUCTION

The Veteran served on active duty in the United States Navy from April 1968 to January 1972. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

The Veteran testified before the undersigned Veterans Law Judge at an April 2016 Travel Board hearing, and a transcript of this hearing is of record. 

In September 2016, the Board remanded this matter to the RO via the Appeals Management Center (AMC) in Washington, D.C. to obtain additional records, as well as a VA medical opinion. The action specified in the September 2016 Remand completed, the matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 11 Vet. App. 268 (1998). 

The issue of entitlement to a higher disability evaluation for service connected asbestos pulmonary disease is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran does not have a bilateral foot disability that had onset in service or that was caused or permanently aggravated by his active military service.

2. The Veteran does not have a bilateral knee disability that had onset in service or that was caused or permanently aggravated by his active military service.

3. The Veteran's heart condition did not have onset in service and was not caused or permanently aggravated by his active military service, to include his service connected disabilities.

4. The Veteran's hypertension did not have onset in service and was not caused or permanently aggravated by his active military service, to include his service connected disabilities.

5. The Veteran's erectile dysfunction did not have onset in service and was not cause or permanently aggravated by his active military service, to include his service connected disabilities.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a bilateral foot disability have not been met. 38 U.S.C.A. §§ 101, 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

2. The criteria for entitlement to service connection for a bilateral knee disability have not been met. 38 U.S.C.A. §§ 101, 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).

3. The criteria for entitlement to service connection for a heart condition, to include as secondary to service connected asbestos pulmonary disease, have not been met. 38 U.S.C.A. §§ 101, 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

4. The criteria for entitlement to service connection for hypertension, to include as secondary to service connected asbestos pulmonary disease, have not been met. 38 U.S.C.A. §§ 101, 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

5. The criteria for entitlement to service connection for erectile dysfunction, to include as secondary to service connected asbestos pulmonary disease, have not been met. 38 U.S.C.A. §§ 101, 1110, 1112, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2016). In general, service connection requires competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Additionally, service connection may be granted, on a secondary basis, for a disability which is proximately due to or the result of an established service-connected disorder. 38 C.F.R. § 3.310. Similarly, any increase in severity of a non-service-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the non-service-connected disease, will be service-connected. Allen v. Brown, 7 Vet. App. 439 (1995). In the latter instance, the non-service-connected disease or injury is said to have been aggravated by the service-connected disease or injury. 38 C.F.R. § 3.310. In cases of aggravation of a veteran's non-service-connected disability by a service-connected disability, the veteran shall be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § 3.322. 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

As an initial matter, the Board notes that the Veteran has offered his own opinion as to the etiology of his claimed disabilities, suggesting that these conditions are related to his active service or are secondary to his service connected disabilities. However, the Veteran has not demonstrated that he has any knowledge or training in determining the etiology of such conditions. In other words, he is a layman, not a medical expert. The Board recognizes that there is no bright line rule that laypersons are not competent to offer etiology opinions. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (rejecting the view that competent medical evidence is necessarily required when the determinative issue is medical diagnosis or etiology). Evidence, however, must be competent evidence in order to be weighed by the Board. Whether a layperson is competent to provide an opinion as to the etiology of a condition depends on the facts of the particular case.

In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew support from Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) for support for its holding. Id. In a footnote in Jandreau, the Federal Circuit addressed whether a layperson could provide evidence regarding a diagnosis of a condition and explained that "[s]ometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

Although the Veteran seeks to offer etiology opinions rather than provide diagnoses, the reasoning expressed in Jandreau is applicable. The Board finds that the question of whether the Veteran's claimed disabilities are related to service, including his service connected disabilities, is too complex to be addressed by a layperson. This connection or etiology is not amenable to observation alone. Rather it is common knowledge that such relationships are the subject of extensive research by scientific and medical professionals. Hence, the Veteran's opinions of the etiology of his claimed disabilities are not competent evidence and are entitled to low probative weight.

Bilateral Foot Disability

Regarding the Veteran's claim for a bilateral foot disability, the Veteran has been diagnosed with a number of foot conditions, including gout, arthritis, flat feet, and bunions. The Veteran has claimed that these conditions were caused by his active military service, to include frequent walking, running, and jumping.

The Veteran's service treatment records show that at his enlistment, he was diagnosed with asymptomatic pes planus. Service treatment records are negative for any further complaints of or treatment for a bilateral foot condition of any type, and his feet and lower extremities were noted to be within normal limits at separation from service.

Post-service, there is no evidence that the Veteran was treated for a foot condition for decades after separation from service.

Private treatment records from Dr. J.B. reflect that at an initial evaluation in July 2007, the Veteran had gouty arthritis at the first metatarsophalangeal joint bilaterally with hallux abductovalgus, which he reported had onset approximately three or four years ago. He also displayed signs and symptomatology of vascular and neurological compromise secondary to diabetes mellitus and hallux rigidus, hallux limitus, and pes planus were noted. Records also show treatment for onychomycosis. Dr. J.B. noted in July 2007 that some of the Veteran's medications could be increasing his uric acid level and aggravating his gout. In an August 2010 letter, he noted that the Veteran has a history of gouty arthritis affecting the first metatarsal phalangeal joints bilaterally, as well as generalized osteoarthritis of the feet with low oxygen saturation and metabolic imbalances. He suggested that these "may be associated to and secondary to chemical exposures." However, he failed to elaborate on these speculations.

At an October 2009 Social Security Consultation, the Veteran reported gout (feet) and rheumatoid arthritis (feet, knees, hands, and shoulders) of twenty years duration, as well as bunions and hammertoes diagnosed five years ago. 

At a July 2012 VA examination, the Veteran was afforded a VA examination of his feet to address whether his bilateral pes planus, which existed prior to service, was aggravated beyond its natural progression by his duties in service. The examiner concluded that it is less likely than not that it was. The examiner noted that the Veteran's condition was documented on his entrance examination and there is no documentation of any bilateral foot pain while in service and the Veteran's separation physical in January 1972 was negative for any bilateral foot condition, including symptomatic pes planus. The Veteran had a right bunionectomy and amputation of his right second toes in 2011, more than thirty years after service. 

A March 2017 VA medical opinion concluded that the medications prescribed to treat the Veteran's service-connected asbestos pulmonary disease (not found) and PTSD, either singly or in combination, have not caused or permanently aggravated the Veteran's gouty arthritis. The examiner explained that she found no evidence of aggravation based on a review of the Veteran's medical records, medical literature review, and her clinical experience.

Based on all the above evidence, entitlement to service connection for a bilateral foot disability must be denied. With the exception of the Veteran's pes planus, none of the Veteran's current bilateral foot disabilities had onset during service or for many years after service. Multiple treatment records show that the Veteran reported the onset of his current foot problems many years after service. Regarding the Veteran's preexisting pes planus, there is no evidence that the Veteran complained of foot pain during his active service and his January 1972 separation physical did not document any worsening of his condition in service. Multiple VA examiners have reviewed the Veteran's medical records and have concluded that his current foot problems were less likely than not caused or aggravated by his active military service, to include medication prescribed to treat his service connected disabilities. While the Veteran's private podiatrist suggested that the Veteran's gout may have been aggravated by some of the Veteran's medications or an unspecified chemical exposure, his opinions are speculative. Speculative medical opinions are insufficient to establish service connection. See Stegman v. Derwinski, 3 Vet. App. 228, 230 (1992); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992). The Board gives greater weight the contemporaneous medical evidence and the opinions of the VA medical examiner. Entitlement to service connection for a bilateral foot disability is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2016).

Bilateral Knee Disability

The Veteran is also seeking entitlement to service connection for a bilateral knee disability.

The Veteran's service treatment records are negative for any documented injury to his knee or any complaints of or treatment for bilateral knee pain. However, at his personal hearing, the Veteran testified that his knees began hurting in service due to the physical demands of his duties, which involved frequent walking, running, climbing stairs, and jumping. He reports that his knee problems continued following his separation from service and that he sought treatment within six months to a year after separation.

Post-service, however, there is no evidence of any treatment for a knee disability for decades after service. 

At an October 2009 Social Security Consultation, the Veteran reported rheumatoid arthritis (feet, knees, hands, and shoulders) of twenty years duration. 

A July 2012 VA examination diagnosed with bilateral knee strain. However, the examiner concluded that the Veteran s bilateral knee conditions was less likely as not caused by or aggravated by his military work duties and/or his bilateral foot condition. The Veteran's service treatment records are negative for any bilateral knee pain and his January 1972 separation physical did not document any bilateral knee or symptomatic bilateral foot conditions. 

April 2014 VA physical therapy note show that the Veteran reported bilateral knee pain of three to four year duration. At a January 2015 VA Orthopedic Consult, he complained of progressively worsening knee pain of ten years duration. VA outpatient treatment records reflect a diagnosis of degenerative joint disease bilaterally, status post total knee replacement surgery. 

Based on the evidence of record, entitlement to service connection for a bilateral knee disability must be denied. The Board finds that the preponderance of the evidence weighs against a finding that the Veteran's bilateral knee disability had onset in service. Although the Veteran's testified at his personal hearing that he began experiencing knee pain in service, there is no evidence in his service treatment records of complaints of or treatment for knee pain and his knees and lower extremities were within normal limits at his separation physical. 

Furthermore, in accounts to his VA treatment providers, as well as a Social Security examiner, the Veteran reported a far more recent onset of his current knee problems. The Board gives particular weight to his statements to his VA treatment providers, because he was then reporting symptoms in the course of seeking medical treatment and had no motive to misrepresent. Rucker v. Brown, 10 Vet. App. 67, 73 (1997) (observing that although formal rules of evidence do not apply before the Board, recourse to the Federal Rules of Evidence may be appropriate if it assists in the articulation of the reasons for the Board's decision); see also LILLY'S: AN INTRODUCTION TO THE LAW OF EVIDENCE, 2nd Ed. (1987), pp. 245-46 (many state jurisdictions, including the federal judiciary and Federal Rule 803(4), expand the hearsay exception for physical conditions to include statements of past physical condition on the rationale that statements made to physicians for purposes of diagnosis and treatment are exceptionally trustworthy since the declarant has a strong motive to tell the truth in order to receive proper care). Finally, the Board notes that there is no medical evidence in the available treatment records supporting a relationship between the Veteran's current knee problems and his active service. 

For all the above reasons, entitlement to service connection for a bilateral knee disability is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2016).

Hypertension

The Veteran is also seeking entitlement to service connection for hypertension, to include as secondary to his service connected asbestos pulmonary disease. 

There is no evidence in the Veteran's service treatment records of hypertension. 

At an October 2009 Social Security Consultation, the Veteran reported a ten year history of hypertension.

At an October 2010 VA examination, the Veteran reported he had been diagnosed with hypertension approximately ten years ago. The Veteran was diagnosed with hypertension with left ventricular hypertrophy. The examiner opined that "[i]t would be only with resort to mere speculation to opine whether or not the veteran's current claimed hypertension ( Hypertension with LVH) is due to or aggravated to any degree by his sc lung condition." The examiner explained that:

Although pulmonary disease of some types can cause pulmonary fibrosis and pulmonary hypertension, there is no current objective evidence of these conditions on CT scan or cardiac cath recently performed. The current medical literature does not support a cause and effect relationship between lung disease and hypertension. Although the veteran's lung medications may cause transient elevations of blood pressure, the current medical literature does not support these as causes for chronic hypertension. It is not possible to determine objectively from the current objective evidence the contribution, if any, that these meds or the veteran's lung condition could make to his hypertension (Hypertension with LVH). However there is no current objective evidence that the veteran' s current claimed hypertension ( Hypertension with LVH) could be caused or aggravated to any degree by his SC lung condition (Asbestosis).

A July 2012 VA examiner also concluded that it is less likely than not the Veteran's hypertension was caused or aggravated by his service connected asbestosis. The examiner observed that the Veteran was diagnosed with essential hypertension prior to his diagnosis of asbestosis and he does not have pulmonary hypertension.

VA outpatient treatment records were also reviewed and these show a diagnosis of essential hypertension, but no diagnosis of pulmonary hypertension or any finding by the Veteran's treatment providers that his hypertension is caused or aggravated by his service connected disabilities.

Based on the above evidence, entitlement to service connection for hypertension must be denied. The Veteran's hypertension did not have onset in service or for decades after service. Additionally, the October 2010 and July 2012 VA examiners have concluded that the Veteran's hypertension is unrelated to his service connected asbestos pulmonary disease. The Veteran has not submitted any medical evidence that contradicts these conclusions, and as noted above, he is not himself competent to offer a medical opinion. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2016).

Heart Condition

The Veteran is seeking entitlement to service connection for a heart condition, claimed as secondary to his service connected asbestos pulmonary disease. 

Service treatment records are negative for any heart condition.

At an October 2009 Social Security Consultation, the Veteran reported a fifteen year history of congestive heart failure.

At an October 2010 VA examination, the Veteran was diagnosed with left ventricular hypertrophy with diastolic dysfunction, however, the examiner noted that there was no evidence for pericardial thickening or disease found on examination.

The examiner concluded that it would be resorting to speculation to opine whether or not the Veteran's current left ventricular hypertrophy with diastolic dysfunction is due to or aggravated to any degree by his service connected lung condition. The examiner explained:

Although pulmonary disease of some types can cause pulmonary fibrosis and pulmonary hypertension, there is no current objective evidence of these conditions on CT scan or cardiac cath recently performed. The current medical literature does not support a cause and effect relationship between lung disease and hypertension or LVH. Although the veteran's lung medications may cause transient elevations of blood pressure, the current medical literature does not support these as causes for chronic hypertension or LVH. It is not possible to determine objectively from the current objective evidence the contribution if any that these meds or the veteran's lung condition could make to his Left Ventricular Hypertrophy with diastolic dysfunction. However there is no current objective evidence that the veteran's current claimed Left Ventricular Hypertrophy with diastolic dysfunction could be caused or aggravated to any degree by his SC lung condition (Asbestosis).

At a July 2012 VA examination, the Veteran was diagnosed with Left Ventricular Hypertrophy with diastolic dysfunction, diagnosed in September 2009 by echocardiogram. The VA examiner opined that based on a review of the Veteran's medical records and medical literature, the Veteran's current heart condition is most likely caused by his hypertension, noting that the Veteran's diagnosis of hypertension preceded his diagnosis of asbestosis. 

VA outpatient treatment records were also reviewed, but did not support any relationship between the Veteran's current heart condition and his active service.

Based on the above evidence, entitlement to service connection for a heart condition must be denied. There is no evidence of a heart condition in service or for decades after service. The October 2010 and July 2012 VA examiners concluded that it is less likely than not that the Veteran's service connected asbestos pulmonary disease caused or aggravated his current heart condition. The Veteran has not submitted any medical evidence to the contrary. While the Veteran may sincerely believe there is a relationship between his claimed disabilities and service, as the Board has noted above, he is a lay person and as such, not competent to offer an opinion concerning the etiology of a complex medical condition such as a heart problem. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2016).

Erectile Dysfunction

Regarding the Veteran's claim for erectile dysfunction, at his personal hearing, the Veteran suggested that his erectile dysfunction is caused or aggravated by his medications, including the medications he takes for his service connected asbestos pulmonary disease. 

There are no complaints of or treatment for erectile dysfunction noted in the Veteran's service treatment records. 

At an October 2010 VA examination, the Veteran reported that his erectile dysfunction began in 2005, after an increase in his medications. The examiner, Dr. K.M., diagnosed the Veteran with erectile dysfunction, as well as hypogonadism. He concluded that he could not opine whether or not the Veteran's erectile dysfunction is due to or aggravated to any degree by his service connected lung condition with resorting to speculation. He explained that "[t]he current medical literature does not support a cause and effect relationship between lung disease and [erectile dysfunction]. The veteran has been diagnosed and is under treatment for hypogonadism, which is at least as likely as not a major cause for his [erectile dysfunction]." He further noted that "[i]t is not possible to determine objectively from the current objective evidence the contribution, if any, that the veteran's lung condition could make to his [erectile dysfunction]. However, there is no current objective evidence that the veteran's current claimed [erectile dysfunction].... could be caused or aggravated to any degree by his service connected lung condition (Asbestosis)."

At a July 2012 VA examination, the Veteran was again diagnosed with erectile dysfunction and hypogonadism. The examiner concluded that likely contributing factors for this condition included hypogonadism, hypertension, and hypertensive medications, none of which are service connected. The examiner further noted that there is no evidence in either the Veteran's medical records or medical literature to support a finding that the Veteran's erectile dysfunction and hypogonadism were caused or aggravated by his service connection asbestosis. 

A March 2017 VA medical opinion concluded that the Veteran's erectile dysfunction is less likely as not (less than 50%) caused by or aggravated by treatment for his service connected PTSD. The examiner noted that there is no objective evidence that the Veteran's erectile dysfunction could be caused or aggravated to any degree by his treatment for PTSD, as his erectile dysfunction predates the onset of treatment for PTSD and there is no evidence of aggravation beyond the condition's natural progression due to PTSD treatment. The examiner further observed that the Veteran has multiple non-service connected risk factors for erectile dysfunction, including, diabetes type 2, hypertension, obesity, hyperlipidemia, and increasing age. The examiner concluded that the Veteran's erectile dysfunction is at least as likely as not due to his multiple non-service connected risk factors rather than the medication for PTSD.

Based on the above evidence entitlement to service connection for erectile dysfunction must be denied. There is no evidence that this condition had onset during the Veteran's active service or for many years after service. Additionally, multiple VA examiners have concluded that it is less likely than not the Veteran's erectile dysfunction was caused or aggravated by his service connected disabilities, to include the medications prescribed to treat these conditions. The Veteran has number of non-service connected health problems that have been determined to be more likely than not the cause of erectile dysfunction and the Veteran has not submitted any contrary medical opinions. Accordingly, entitlement to service connection for erectile dysfunction is denied. The evidence in this case is not so evenly balanced so as to allow application of the benefit-of- the-doubt rule. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102 (2016).

The Duty to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2016). Here, the Veteran was provided with the relevant notice and information, and he has not alleged any notice deficiency during the adjudication of his claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA also has a duty to assist the Veteran in obtaining potentially relevant records, and providing an examination or medical opinion when necessary to make a decision on the claim. Here, the Veteran's service records, VA records, SSA records, and identified private treatment records have been obtained and associated with the claims file. The Veteran was also provided with VA examinations which, collectively, contain a description of the history of the disabilities at issue; document and consider the relevant medical facts and principles; and provide opinions regarding the etiology of the Veteran's claimed conditions. While the Veteran was not afforded a VA examination of his bilateral knee disability, as there is no evidence beyond the Veteran's unsubstantiated lay statements of an association between his current condition and service, referral for a medical opinion was not required. See Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Neither the Veteran nor his representative has argued that the VA examiner's opinions are inadequate, or that any prejudice results from the assistance provided for this appeal. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015), cert. denied, (U.S. Oct. 3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board ... to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board). VA's duty to assist with respect to obtaining relevant records and an examination has been met. 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Finally, the Veteran testified at Board hearing. The hearing was adequate as the Veterans' Law Judge who conducted the hearing explained the issues and identified possible sources of evidence that may have been overlooked. 38 C.F.R. 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010).


ORDER

Entitlement to service connection for a bilateral foot disability is denied.

Entitlement to service connection for a bilateral knee disability is denied.

Entitlement to service connection for a heart condition, to include as secondary to service connected asbestos pulmonary disease is denied.

Entitlement to service connection for hypertension, to include as secondary to service connected asbestos pulmonary disease is denied.

Entitlement to service connection for erectile dysfunction, to include as secondary to service connected asbestos pulmonary disease is denied.


REMAND

The Veteran is seeking entitlement to a disability evaluation in excess of 10 for his service connected asbestos pulmonary disease. Unfortunately, a remand is required for clarification.

First, clarification is required to interpret the results of a January 2017 pulmonary function test. FVC was 85 percent of predicted value. DSB was 65 percent of predicted value. Per VA regulation, where, as here, there is a disparity between the results of different pulmonary function tests so that the level of evaluation would differ depending on which test result is used, VA will use the test result that the examiner states most accurately reflects the level of disability. The examiner who administered the January 2017 test did not clarify which finding more accurately reflects the Veteran's level of functioning on this particular test. 

Additionally, the record reflects that in addition to his service connected asbestos pulmonary disease, the Veteran also has a diagnosis of COPD, which is not service connected. Thus, it appears that at least some of the Veteran's reported complaints associated with a respiratory disability can be attributed to a non-service connected disability. It is unclear whether it is possible to estimate to what extent the Veteran's functionality is limited by his service connected condition versus his non-service connected COPD. In a May 2017 supplemental statement of the case, the RO concluded that the Veteran's January 2017 pulmonary function test results could not be attributed to his asbestos pulmonary disease, but the Board is unable to find any medical opinion that clearly supports this determination. On remand, a medical opinion should be obtained to clarify this issue. 

Accordingly, the case is REMANDED for the following action:

1. Refer the Veteran's claims folder to the physician who administered the January 2017 pulmonary function test to clarify whether the FVC or DLCO (SB) more accurately reflects the Veteran's level of disability. 

2. Refer the Veteran's claims folder for a VA medical opinion to determine, if possible, what extent of the Veteran's respiratory functional limitations can be attributed to his service connected asbestos pulmonary disease rather than his COPD or other non-service connected respiratory disability.

A complete rationale for this opinion should be provided. All opinions should be based on examination findings, historical records, and medical principles. The examiner should fully articulate a sound reasoning for all conclusions made. 

If the requested opinions cannot be provided without resorting to mere speculation, the examiner should so state but, more importantly, explain why an opinion cannot be provided without resorting to speculation, as merely stating this will not suffice.

The Veteran's claim folder and a copy of this REMAND should be furnished to the examiner, who should indicate in the examination report that he or she has reviewed the claims file. 

All findings should be described in detail and all necessary diagnostic testing performed. 

The claims file must be properly documented regarding any notifications to the Veteran as to any scheduled examination.

3. When the development requested has been completed, and the RO has ensured compliance with the requested action, this case should again be reviewed by the RO on the basis of the additional evidence. If the benefit sought is not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case, and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).





____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs